Storage ICBS

## FACILITY SHEET

### (REAL ESTATE TERM LOAN 3)

This Facility Sheet (as may be amended, modified or supplemented from time to time, referred to herein as this "Facility Sheet") is dated as of August 9, 2018 and is with regard to Facility Loan No 22115475 between EASTERDAY FARMS PRODUCE, CO, a Washington corporation ("Easterday Farms Produce"), 3E PROPERTIES, a Washington general partnership ("3E Properties"), GALE ALLEN EASTERDAY ("Gale Easterday") and KAREN LOUISE EASTERDAY ("Karen Easterday"), married spouses, CODY ALLEN EASTERDAY ("Cody Easterday") and DEBBY EASTERDAY ("Debby Easterday"), married spouses, and JODY DEE EASTERDAY ("Jody Easterday") and ANDREW H WILLS ("Andrew Wills"), married spouses (Easterday Farms Produce, 3E Properties, Gale Easterday, Karen Easterday, Cody Easterday, Debby Easterday, Jody Easterday, and Andrew Wills are herein individually and collectively, "Borrower") and RABO AGRIFINANCE LLC, a Delaware limited liability company ("Lender") and hereby supersedes any and all previous facility sheets that governed this obligation

Parties and Lender have entered into a Master Credit Agreement ("MCA") dated August 9, 2018 which may include schedules, addendums, and exhibits thereto  The MCA incorporates by reference and includes a Schedule of Definitions and Covenants ("Schedule of Definitions and Covenants") dated of even date with the MCA and any Applicable Obligor Covenant Schedule  Borrower agrees that Borrower has received and reviewed the Schedule of Definitions and Covenants and any Applicable Obligor Covenant Schedule  All terms, covenants, conditions and restrictions set forth in the MCA are incorporated herein by reference as if fully set forth herein  Capitalized terms contained in this Facility Sheet are used as defined in the Schedule of Definitions and Covenants and any Applicable Obligor Covenant Schedule  Some or all of the capitalized terms defined in the Schedule of Definitions and Covenants are used in this Facility Sheet as so defined and the terms of such Schedule of Definitions and Covenants are incorporated by reference into this Facility Sheet for purposes of so defining the capitalized terms that are used in this Facility Sheet in accordance with the Schedule of Definitions and Covenants  To the extent any term is defined in the Schedule of Definitions and Covenants but is not used in this Facility Sheet or any amendment, modification or supplement to this Facility Sheet, such term shall be deemed to be disregarded, of no meaning and without any effect  Except as otherwise defined in this Facility Sheet, the MCA or in the Schedule of Definitions and Covenants, or unless the context otherwise requires, each term that is used in this Facility Sheet which is defined in Article 9 of the UCC shall have the meaning ascribed to that term in Article 9 of the UCC

Borrower requests that Lender make a Loan pursuant to this Facility Sheet  Lender agrees to make such Loan, subject to the terms and conditions of this Facility Sheet, the MCA and the Schedule of Definitions and Covenants

### ARTICLE 1 - PRINCIPAL LOAN TERMS

This Facility Sheet is made and entered on the following Loan terms

1 01   **Loan Type**   The Loan Type being made pursuant to this Facility Sheet is as follows  Real Estate Term Loan 3

1 02   **Loan Amount**   Lender shall lend Borrower the principal sum of $850,000 00

1 03   **Purpose**   The Real Estate Term Loan 3 must be used only for to fund a related party note from 3E Properties to Jody Easterday and Andrew Wills

1 04   **Interest Rate**   The unpaid principal balance of the Real Estate Term Loan 3 will bear interest at the rate of 4 820% per annum, fixed for the term of the facility

1 05   **Required Payments, Maturity Date**

(a)   Borrower shall make equal combined payments of principal and accrued interest on the Real Estate Term Loan 3 in an amount calculated to fully amortize the original principal amount of the Real Estate Term Loan 3 over a term of 84 Real Estate Term Loan 3 Loan Months on January 1, 2019 and the first day of each January, April, July and October during the period from that date to the Real Estate Term Loan 3 Maturity Date

(b)   The unpaid principal balance of, all unpaid accrued interest on, and other charges under this Facility Sheet with respect to the Real Estate Term Loan 3, shall be paid on October 1, 2025 (the "Real Estate Term Loan 3 Maturity Date")

1.06   **Prepayments.**   Prepayments of the Real Estate Term Loan 3 are subject to the following

(a)   The Real Estate Term Loan 3 may be Prepaid at any time if accompanied by payment of the Prepayment Fee

(b)   Notwithstanding the provisions of this section to the contrary, during each year, Borrower may prepay up to 20% of the original principal amount of the Real Estate Term Loan 3 without Prepayment Fee or penalty  Prepayments of the Loan which during any year exceed, in the aggregate 20% of the original principal amount of the Real Estate Term Loan 3 ("Real Estate Term Loan 3 Excess Payments") must be accompanied by payment of the Real Estate Term Loan 3 Prepayment Fee

(c)   For purposes of Prepayments of the Real Estate Term Loan 3, the "Real Estate Term Loan 3 Prepayment Fee" shall mean the Yield Maintenance Fee, calculated using a Reinvestment Spread equal to 1 5%, and 1% as the Yield Maintenance Minimum

(d)   Notwithstanding the provisions of this section to the contrary, during the 30 day period immediately prior to the Real Estate Term Loan 3 Maturity Date, Borrower may prepay the entire unpaid balance of the Real Estate Term Loan 3 in full, without Prepayment Fee or penalty

1.07   **Definition of "Loan Month "**   The term "Real Estate Term Loan 3 Loan Month" means the one month period beginning on the first day of the calendar month immediately following the Closing Date, and each successive one month period

1.08   **The Real Estate Term Loan 3 Note**   The Real Estate Term Loan 3 has been or will be evidenced by this Facility Sheet and a promissory note in a form provided by Lender (the "Real Estate Term Loan 3 Note")

### ARTICLE 2 - COVENANTS REGARDING THE LOAN TYPE MADE UNDER THIS FACILITY SHEET

2 01   **Prepayments Generally.**   Prepayments must be accompanied by all unpaid accrued interest on the Prepayment and all other amounts due under this Facility Sheet  Each Prepayment of a portion of the Loan will be applied to the most remote payment of the principal due under

this Facility Sheet. If Lender receives any Prepayment which it is permitted to refuse, Lender may accept the Prepayment, except that Lender may, as a condition of acceptance, require the payment of interest which would accrue on the amount Prepaid through the date when Lender would be obligated to accept the Prepayment, or the date the principal amount Prepaid would be due under this Facility Sheet, whichever is earlier.

EXCEPT AS OTHERWISE SET FORTH HEREIN, BORROWER EXPRESSLY WAIVES THE RIGHT TO PREPAY THE LOAN IN WHOLE OR IN PART WITHOUT PREPAYMENT FEE AND EXPRESSLY AGREES TO PAY THE PREPAYMENT FEE IN ACCORDANCE WITH THIS FACILITY SHEET UPON ANY ACCELERATION OF THE REAL ESTATE TERM LOAN 3 MATURITY DATE OF THE LOAN, INCLUDING, WITHOUT LIMITATION, ANY SUCH ACCELERATION UPON A PROHIBITED TRANSFER OR ACCELERATION UPON DEFAULT.

2.02  **Default Rate.** Upon the occurrence of an Event of Default, the principal balance of Loan and, to the extent permitted by Applicable Law, all other Loan Obligations shall, from the date of the Event of Default until the date Lender notifies Borrower that it is waived or cured or all Loan Obligations are paid in full, bear interest at the Real Estate Term Loan 3 Default Rate. Subject to the provisions of the Schedule of Definitions and Covenants and this Facility Sheet, the "**Real Estate Term Loan 3 Default Rate**" means the rate applicable to the unpaid principal balance of the Real Estate Term Loan 3 plus 10.000% per annum. Interest payable at the Real Estate Term Loan 3 Default Rate shall be paid from time to time on demand, or if not sooner demanded, on the first day of each month. The provisions of this section may result in compounding of interest. The provisions of this section will neither constitute a waiver of any Event of Default nor require the declaration of an Event of Default.

2.03  **Collateral Documents.** The payment and performance of the Obligations are secured by the following:

(a)  all Liens in favor of Lender created under and secured by the Loan Documents.

### ARTICLE 3 - CONDITIONS

3.01  **Conditions of the Loan.** Lender's obligation to make the Loan(s) is subject to the following conditions precedent:

(a)  No Event of Default or event which, with the passage of time or the giving of notice would constitute an Event of Default has occurred and remains uncured;

(b)  Lender's receipt of a closing fee in the amount of $6,500.00; and

(c)  reimbursement of Lender's out of pocket expenses, including Legal Fees and any fees and costs payable by Lender as set forth in the MCA or any amendment, modification or supplement thereto, incurred in connection with the underwriting of the Loans or the Closing.

### ARTICLE 4 – REPRESENTATIONS AND WARRANTIES

Until such time as all Obligations have been paid in full and Lender has no obligation to make any additional advance under the Loan, Borrower (or the Person or Persons being one or more of the Borrowers as may be specifically named in any of the following representations and covenants) agrees to and makes the following representations and covenants.

4.01  **Master Credit Agreement Representations.** Borrower re-makes and confirms all of Borrower Representations set forth in the MCA.

4.02  **Entire Agreement.** This Facility Sheet and the other Loan Documents, collectively (i) represent the sum of the understandings and agreements between Lender and Borrower concerning this credit, (ii) replace any prior oral or written agreements between Lender and Borrower concerning this credit, and (iii) are intended by Lender and Borrower as the final, complete and exclusive statement of the terms agreed to by them.

4.03  **Covenants.** Borrower hereby makes and agrees to be bound by all of the Covenants as set forth on Schedule 1 attached hereto and made a part hereof.

4.04  **Reporting Requirements.** Borrower hereby makes and agrees to be bound by all of the Reporting Requirements as set forth on Schedule 2 attached hereto and made a part hereof.

4.05  **WAIVER OF PRIOR CLAIMS.** BORROWER WAIVES AND RELEASES ANY AND ALL CLAIMS AGAINST LENDER, ITS PARENT, SUBSIDIARIES, AFFILIATES AND ITS MERGED PREDECESSOR, AG SERVICES OF AMERICA, INC., THE SUBSIDIARY OF SUCH PREDECESSOR, AG ACCEPTANCE CORPORATION, AND THE RESPECTIVE SUCCESSORS, ASSIGNS, PARTICIPANTS, AGENTS AND EMPLOYEES OF EACH AND ALL OF THE FOREGOING, RELATING OR PERTAINING TO OR AS A RESULT OF THE EXISTING LOANS, AND ANY OTHER ACT OR OMISSION WHICH HAS OCCURRED PRIOR TO THE EXECUTION OF THIS FACILITY SHEET, INCLUDING ALL CLAIMS OF USURY, FRAUD, DECEIT, MISREPRESENTATION, UNCONSCIONABILITY, DURESS, OR LENDER LIABILITY, ANY OTHER CLAIM IN TORT OR IN CONTRACT, OR FOR VIOLATION OF ANY LAW, RULE OR REGULATION.

4.06  **Expenses.** The Borrower shall pay within ten (10) Business Days after demand from Lender, all costs and expenses incurred (or reimburse Lender for payment of) in connection with the preparation, execution, delivery, filing, and administration of this Facility Sheet (including, without limitation, Legal Fees incurred in connection with the preparation of this Facility Sheet and advising the Lender as to its rights, and the cost of any credit verification reports or field examinations of the Borrower's properties or books and records).

4.07  **State Specific Addendum.** The following state specific language is hereby added to this Facility Sheet as set forth on Schedule 3 attached hereto and made a part hereof.

4.08  **Counterpart Execution.** This Facility Sheet may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which, when taken together, shall be deemed to be one and the same agreement or document. A signed copy of this Facility Sheet transmitted by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original executed copy of this Facility Sheet for all purposes, provided, however that Borrower shall promptly deliver an original signed copy of this Facility Sheet to Lender.

**BORROWER AND GRANTOR UNDER THE MASTER SECURITY AGREEMENT:**

Address for Notices:
1427 N 1st Ave
Pasco, WA 99301

Alternate address for notice by U.S. Mail:
PO Box 2813
Pasco, WA 99302

**EASTERDAY FARMS PRODUCE, CO.**, a Washington corporation

By: _____
JODY DEE EASTERDAY
President

Address for Notices:
1427 N 1st Ave
Pasco, WA 99301

Alternate address for notice by U.S. Mail:
PO Box 2813
Pasco, WA 99302

**3E PROPERTIES**, a Washington general partnership

By: _____
JODY DEE EASTERDAY
Partner

By: _____
CODY ALLEN EASTERDAY
Partner

By: _____
DEBBY EASTERDAY
Partner

By: _____
GALE ALLEN EASTERDAY
Partner

By: _____
KAREN LOUISE EASTERDAY
Partner

Address for Notices:
631 Bellflower Road
Mesa, WA 99343

_____
GALE ALLEN EASTERDAY

Address for Notices:
631 Bellflower Road
Mesa, WA 99343

_____
KAREN LOUISE EASTERDAY

Address for Notices:
830 Bellflower Road
Mesa, WA 99343

_____
CODY ALLEN EASTERDAY

Address for Notices:
830 Bellflower Road
Mesa, WA 99343

_____
DEBBY EASTERDAY

Address for Notices:
7915 W. Dradie St.
Pasco, WA 99301

_____
JODY DEE EASTERDAY

Address for Notices:

3E Properties/EFP MCA 2018
Real Estate Term Loan 3 Facility Sheet

3

7915 W. Dradle St.
Pasco, WA 99301

_____
**ANDREW H WILLS**

**LENDER:**

Address for Notices:

14767 N. Outer 40 Rd., Suite 400
Chesterfield, MO 63017
Attention: Loan Closing Department

**RABO AGRIFINANCE LLC**

By: _____
Name: _Erwin Sandos_
Title: _Vice President_

3E Properties/EFP MCA 2018
Real Estate Term Loan 3 Facility Sheet

4

## SCHEDULE 1

### Covenants

Until such time as all Obligations have been paid in full

**1.01  Insurance**

(a)  If any Real Estate is located in an area now or hereafter designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Borrower agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Real Estate is located in a special flood hazard area, for the lesser of 1) the full unpaid principal balance of the Loan, plus Swap Counterparties' derivative exposure under the Hedging Agreements as calculated by Swap Counterparties, plus any prior Liens on the property securing the Loan, 2) the total replacement value of any structure located in the flood hazard area, or 3) the Real Estate Term Loan 3 Maximum Amount available under the National Flood Insurance Program for the particular type of property, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the Loan

## SCHEDULE 2

### Reporting Requirements

2.01 <u>Reporting Requirements</u>. Borrower shall furnish to Lender

(a) promptly upon receipt, copies of all Notices, orders, or other communications regarding (i) any enforcement action by any Governmental Authority relating to health, safety, the environment, or any Hazardous Substances with regard to Borrower's property, activities, or operations, or (ii) any claim against Borrower regarding Hazardous Substances;

(b) promptly upon Lender's request, all other books, records, statements, lists of property and accounts, budgets, forecasts, reports, records or other information pertaining to the condition or operations of Borrower requested by Lender

## SCHEDULE 3
## STATE SPECIFIC ADDENDUM

1.01  **Commercial Loan.** Borrower acknowledges that the proceeds of the Loan are primarily for agricultural, commercial, investment or business purposes, and are not for a consumer transaction (which is defined as a transaction primarily for personal, family or household purposes).

1.02  **NOTICE IS HEREBY GIVEN TO BORROWER THAT ORAL AGREEMENTS OR ORAL COMMITMENTS TO LEND MONEY, EXTEND CREDIT, MODIFY LOAN TERMS OR FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**